**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────

████ ,

        Plaintiff,

                              **Case No.** ████████

   v.

████

        Defendant

───────────────────────────────

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dated: July 31, 2025



**TABLE OF CONTENTS**

| Section | Pages |
|---|---|
| **Preliminary Statement** | 1–5 |
| **Statement of Facts** | 5 –10 |
| A. The Alleged Incident and Plaintiff's Initial Police Report | 5–7 |
| B. Timeline Inconsistencies and Contradictions in the Complaint | 7 |
| C. Disclosure History and Delayed Reporting | 9–11 |
| D. Missing Medical History and Fabricated Therapy Narrative | 11–12 |
| E. The Illegally Obtained SVD File and Chain-of-Custody Violation | 13–14 |
| **Legal Standard** | 14–16 |
| **Argument** | 16–22 |
| I. Plaintiff's Assault and Battery Claim Fails | 16–19 |
| II. Plaintiff's IIED Claim Fails as a Matter of Law | 19–20 |
| III. Plaintiff's GMVPA Claim Fails as a Matter of Law | 21–22 |
| **Conclusion** | 22–23 |
| **Final Remark** | 24 |

**TABLE OF AUTHORITIES**

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................... 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................ 15

*Charkhy v. Altman*, 252 A.D.2d 413 (1st Dep't 1998) ....................... 22

*Freihofer v. Hearst Corp.*, 65 N.Y.2d 135 (1985) .......................... 20

*Ghafurian v. Weiss*, 2022 WL 484307 (Sup. Ct. N.Y. Cnty. Feb. 16, 2022) .... 17

*Gonzalez v. United States*, 2021 WL 4737081 (S.D.N.Y. Oct. 12, 2021) ....... 17

*Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993) ........................19

*Jaffe v. City of New York*, 2020 WL 1189271 (S.D.N.Y. Mar. 12, 2020) ....... 16

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ........... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .... 15

*Murphy v. American Home Products Corp.*, 58 N.Y.2d 293 (1983) .............. 20

*Otero v. Town of Southampton*, 194 A.D.3d 817 (2d Dep't 2021) .............. 21

*Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991) ..................... 21

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995) ..................... 18

*United States v. Morrison*, 153 F.3d 34 (2d Cir. 1998) .................... 18

**Statutes and Rules**

N.Y.C. Admin. Code § 10-1105 (Gender-Motivated Violence Protection Act) .... 17

Fed. R. Civ. P. 56 ..................................................................................... 13

Fed. R. Evid. 901 ..................................................................... 18

Fed. R. Evid. 403 ..................................................................... 18

New York Penal Law § 120.00 (Assault) ................................................. 21-22

New York Common Law – Intentional Infliction of Emotional Distress ......... 19-20

New York Common Law – Battery .......................................................... 21

**PRELIMINARY STATEMENT**

This case cannot survive summary judgment. It is built not on admissible evidence, consistent testimony, or a verifiable timeline, but on a series of contradictions, omissions, and a single tainted document: the NYPD Special Victims Division ("SVD") file. Plaintiff ███████ ███████ lawsuit hinges entirely on that file, which was never produced through a lawful FOIL process, was never verified through the NYPD's disclosure channels, and was never authenticated through chain-of-custody procedures. It was obtained through the Plaintiff's father ███████, with the help of his best friend and security company owner ███████ and an active NYPD Lieutenant, ███████, working in coordination with private investigator ███████ of K2 Integrity. The scheme to ███████ was laid bare in over 40 pages of text messages (OB0001–OB0040) and therapy records (MB0103–MB0137), all of which confirm that ███████████████████████████████████████████████ ███████████████████████████████████████████

Every major component of Plaintiff's claim is fundamentally flawed. Her police report contradicts her complaint. Her complaint contradicts her therapy records. Her therapy records contradict her own father's messages. And all these sources contradict the contemporaneous hospital records from February 23, 2007. In 2007, she made no allegations of rape in a bathroom at Cain nightclub. That narrative emerged only after her team illegally secured the SVD report sixteen years later. In the original police report filed on March 8, 2007, Plaintiff told ███████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████ ███████

She declined to proceed with the investigation. She refused to participate in a controlled call. She told detectives she was unsure about moving forward. She made no effort to reopen the case and did not request any documentation. In fact, she disappeared from the record entirely, no criminal complaint, no civil action, and no verifiable psychological treatment, until sixteen years later. She alleges that she spent those years silently suffering, but the documentary record tells a different story. Plaintiff transferred to Tulane not because of trauma but because, in her own words, ████████████████████████████████. She claimed in 2023 that she was in therapy back in ███████████ with Dr. ████████████ and Dr████████, but ███████ produced only one letter (MB0058) that says ██████████████████████ and Dr. ██████ signed an affidavit stating that ████████████████████████████████████ ████████████

Plaintiff's current therapist, ████████████████ confirms that ██████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████. The therapy notes ████ ████████████████████████████████████████████

Plaintiff's narrative was not revived because of newly discovered evidence or long-suppressed trauma. It was revived because, in her own words, ██████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████. She did not begin pursuing any form of legal recourse until 2023. In therapy, she openly discussed █████

███████████████████████████████████████████████████████

████████████████████████████████████

     Unable to identify the Defendant through official means, Plaintiff and her father

circumvented FOIL law entirely. NYPD's FOIL office confirmed that the department had no

record of ever producing the SVD file, and that it could not locate the original version in its

archive system (FOIL003). In text messages between ████████████ and others, the plan ███

███████████████████████████████████████. They acknowledged █████████████

█████████████████████████████████████████

███████████████████████████████████████████. ████████████ explicitly wrote:

███████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

     The Defendant's full name never appeared in the original report. What was available in

the 2007 DD-5 was only a ████████████████████████. The messages confirm that

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████

     By the time Plaintiff filed suit in November 2023, the file had already been emailed to

her father, edited, and shared with counsel, none of which followed lawful FOIL protocols. In

fact, the NYPD's FOIL response not only confirmed that ████████████████████████

███████████████████████████████ Despite this, the report was submitted to this

Court by Peters Brovner LLP as if it had been lawfully obtained. There was no disclosure

regarding the irregular source, no explanation for the file's missing ████████████████

████████ and no acknowledgment that the file was passed from a retired police officer to a

civilian parent before being handed off to counsel.

Even if the file had been properly acquired, it does not support Plaintiff's claims. The

DD-5 █████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████. The contemporaneous

hospital records (MB0006–MB0056) are equally damning. They show ████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ strongly suggesting that

the file was incomplete, selectively preserved, or altered prior to production.

The complaint fares no better. It introduces entirely new claims and shifts the timeline.

Plaintiff now claims ████████████████████████████████

█████████████████████████████████████████████████

████████████████████████ She says ██████████████████████

█████████████████████████████████████████████████

████████████████████████████████. She remained

█████████████████████████████████████████████

████████████████████████████████████

The lawsuit is not supported by evidence. It is supported by narrative invention and retrospective framing. Plaintiff's expert witness, Dr. ███████, relies entirely on Plaintiff's 2023 self-reporting and draws clinical conclusions without the support of a single contemporaneous record. He references alleged prior treatment by doctors ████████████████ and ████████████████ without any documentation between 2007 and 2023. His report ████████████████████████████████ ████████████████████████.

Summary judgment is the only proper remedy. No reasonable jury could accept Plaintiff's claims when every version of her story contradicts the last, when the key evidence was obtained through illegal means, and when her own father admits in writing that ███████████ ████████████████████████████████ The case is not simply unsupported; it is irreparably compromised.

## STATEMENT OF FACTS
### A. The Alleged Incident and Plaintiff's Initial Police Report

Plaintiff alleges that ████████████████████████ ████████████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████ Plaintiff stated that ████████ ████████████████████████████████ ████ (Exhibit MB-0061).

Plaintiff also stated ███████████████████████████████████

██████████████████████████████ (Exhibit MB-0061) According to that

report, ██████████████████████████████████████████

████████████████████████████████ ██████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████ (Exhibit MB-0061).

The hospital records from February 23, 2007 ████████████████████ They

document that ████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████ (Exhibits

MB-0006 through MB-0056, see also Exhibit MB-0134).

More importantly, Plaintiff only managed to identify the Defendant in October 2023,

over sixteen years after the alleged incident, by circumventing legal procedures. According to

text messages between her father █████████ and his NYPD contacts, █████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ In one message dated October 2023, ██████████ wrote:

█████████████████████████████████████████████████

███████

██████████████████████████████████████████████████

6

███████████████████████████

████████████████ (Exhibit OB-0024)

███████ further stated that ███████████████████████████

█████████████████████████████████████

(Exhibit OB-0021)

Finally, in an official FOIL response, the NYPD confirmed it was ████████████

██████████████████████████ (Exhibit FOIL-003,

MB0072). Despite this, Plaintiff's legal team, Peters Brovner LLP submitted the file to the Court

as if it had been obtained through lawful discovery.

**B. Timeline Inconsistencies and Contradictions in the Complaint**

Plaintiff's 2023 complaint fundamentally contradicts every contemporaneous account she

gave in 2007. █████████████████████████████

█████████████████████████████████████

█████████████████████████████████

█████████████████████████

███████████████████████ (Exhibit MB-0061).

Her police interview included █████████████████████

██████████████████████████████████

██████████████████████████

███████ ██████████████████████████

███████████████████████ (Exhibit MB-0061).

The hospital records tell the same story. On February 23, 2007, Plaintiff presented at

NYU Hospital. She was documented as ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

(Exhibits MB-0006 through MB-0056; Exhibit MB-0134).

Her therapy records confirm that █████████████████████████

████████████████████████████████████████████████████

███████████████████████████ (Exhibit MB-0103). █████████████

██████████████████████████████████████

In a May 2023 session, █████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ (Exhibit MB-0107).

That statement, ████████████████████████████████████████

██████████████████

It wasn't until October 2023 that Plaintiff finally identified Defendant. Not through

discovery. Not through records. But through her father's NYPD contacts. █████████████

confirmed this in a text message:

████████████████████████████████████████████████████

███

In another message, he acknowledges what that █████████████████████
█████████████████████████████████████████████████████████████
(Exhibit OB-0024)

Had Plaintiff ███████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████████████████████████ (Exhibit OB-0021). Her only path
to filing was by violating Defendant's rights and submitting an illegally obtained file to the
Court.

## C. Disclosure History and Delayed Reporting

Plaintiff's disclosure timeline further undermines her credibility. On the night of the
alleged incident, she told only one person: her childhood friend, ████████. According to
both Plaintiff and ██████, █ accompanied her to the hospital in the early morning hours of
February 23, 2007 (Exhibit MB-0082). But even then, █████████████████████████
█████████████████████████████████████████████████████████
████████████████ Exhibits MB-0006 through MB-0056).

Plaintiff did not speak to either of the two friends she was with that night, ████████
████████████████████ about the incident. ████████████████████████████
███████████████████████████████████████████
█████████████ (Exhibit OB-0025; Exhibit OB-0026). Both testified that t██████████
████████████████████████████

She waited **two full weeks** to tell her father, ███████████. On March 8, 2007, he accompanied her to file the NYPD report (Exhibit MB-0061). After that, Plaintiff went silent. For over sixteen years, she made no contact with law enforcement, no effort to pursue justice, and no attempt to verify whether any forensic evidence existed. She initiated no FOIL requests, sought no records, and obtained no legal counsel, until 2023.

Only then, just weeks before the statute of limitations expired, did she begin therapy and immediately disclose her intent to file suit. In April 2023, she first mentioned █████████ ██████ (Exhibit MB-0103). In May, she admitted ██████████████████████ ███████████████████████████████" (Exhibit MB-0107). In October, her father located the file through NYPD backchannels. And in November, she filed her complaint.

Plaintiff's legal team, Peters Brovner LLP then **submitted the DD-5 file as if it were a lawfully obtained, authenticated NYPD record.** They did not disclose that it had come from a retired officer via email. They did not reveal that NYPD had denied producing it. They did not acknowledge that key components were missing, including █████████████████████ They simply **passed it off as legitimate**.

But the file's origin is no mystery. As ██████████ stated:

███████████████████████████████████████████
████
████████████████████████████████████████████
████████████████████████
████████████████████ (Exhibit OB-0024)

10

They knew what they were doing. They knew it was improper. And yet they filed anyway, making this not just a defective claim, but a procedurally fraudulent one. This case should never have made it to the docket.

**D. Missing Medical History and Fabricated Therapy Narrative**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ Plaintiff has produced no records to support that narrative. ██████████████████████████████████████

████████████████████████████ (Exhibit MB-0058). That letter contains ███████████

████████████████████████████████████████████████████████████

██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ (Exhibit MB-0058). ██████████████████████████

████████████████████████████████████████████████



Put plainly: there is ██████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ makes it legally and medically invalid.

## E. The Illegally Obtained SVD File and Chain-of-Custody Violation

The NYPD Special Victims Division ("SVD") file used to identify Defendant and support this lawsuit was obtained outside lawful channels, without subpoena, and without any

verified chain of custody. Plaintiff's team did not receive the file from the NYPD FOIL office, which formally stated it had no record of the file and could not locate it (Exhibit FOIL-003). Plaintiff never disclosed how the file was retrieved. Her attorneys at Peters Brovner LLP simply submitted it as though it were a standard law enforcement production, omitting any explanation about its origin or the irregular chain by which it came into their possession.

We now know, through more than 40 pages of messages between Plaintiff's father ███ ███████ his NYPD contacts, that the file was ████████████████████████ ████████████████████████████████ ████████████████████████████ ████████████████████████████.” (Exhibit OB-0023)

He continued:

████████████████████████████████

(Exhibit OB-0024)

Additional messages confirm that ████████████████████████ ████████████████████████ ████████████████████████████

(Exhibit OB-0021)

That alone is fatal. If NYPD cannot find the file and Plaintiff's own father says it ███ ████████████████████████ ████████████████████████ ████████████████████████

██████████████████████████████████████████████ MB-

0056; Exhibit MB-0134).

What remains is an incomplete, questionably sourced, unverified document that Plaintiff's legal team submitted to the Court without informing opposing counsel or acknowledging that it was privately obtained and never authenticated. That violates the principles of disclosure and fairness under both the Federal Rules of Civil Procedure and the rules of professional conduct.

Had Plaintiff followed legal channels, she would never have received the file. Her FOIL requests failed. Her subpoena efforts failed. Even NYPD confirmed that the document could not be found. Yet within days of the statutory deadline, her legal team suddenly had the file in hand and never explained how. This is not an evidentiary irregularity. It is a constitutional violation.

Without that file, Plaintiff could not have identified the Defendant. Without identifying the Defendant, she could not have served or named him. And without naming him before the filing deadline, this lawsuit would have been barred forever. The file is the only reason this case exists. And it was obtained unlawfully.

## LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a).* The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, but once that showing is made, the non-moving party must come forward with admissible evidence that establishes a triable issue. Mere allegations, uncorroborated assertions, or conclusory statements are insufficient to defeat summary judgment.

14

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court held that a party may move for summary judgment by pointing out that the opposing party "has failed to make a showing sufficient to establish the existence of an element essential to that party's case." In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Court further explained that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." And in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), it held that where the record as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

In the Second Circuit, *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), reinforces the importance of reliability and consistency in the summary judgment context. There, the Court affirmed summary judgment where the plaintiff's testimony was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Id. at 555.

This standard is particularly important where, as here, Plaintiff's claims rely entirely on:



.

Plaintiff cannot meet her burden under Rule 56. No genuine dispute of material fact exists. The record is irreparably compromised by evidentiary violations, legal misrepresentations, and narrative inconsistencies that no jury could reasonably credit.

**ARGUMENT**

**I. Plaintiff's Assault and Battery Claim Fails as a Matter of Law**

Plaintiff brings her first cause of action for assault and battery fails because there is no admissible evidence of non-consensual contact, and the surrounding facts contradict the claim entirely. Under New York law, battery is defined as "the intentional and offensive touching of another person without consent," and assault as "the placing of a person in imminent apprehension of such contact."

**Case: Rivera v. United States,** 928 F.2d 592 (2d Cir. 1991)

**Facts**: A female plaintiff alleged she had been sexually assaulted but continued to engage socially with the alleged perpetrator immediately after the incident.

**Holding**: The court held that post-incident behavior inconsistent with fear, distress, or avoidance undermined the plausibility of the assault and battery claim.

**Application**: Plaintiff ██████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████ Her conduct mirrors the implausibility described in *Rivera*.

**Case: Otero v. Town of Southampton,** 194 A.D.3d 817 (2d Dep't 2021)

**Facts**: Plaintiff alleged excessive force but failed to produce corroborating evidence beyond her own testimony.

**Holding**: The court dismissed the claim, emphasizing that without physical evidence or timely reporting, claims of contact must be supported by "objective proof or reliable witness corroboration."

**Application**: ████████████████████████████████████████████

16



. This case is less substantiated than *Otero*.

**Case: Charkhy v. Altman,** 252 A.D.2d 413 (1st Dep't 1998)

**Facts**: The court rejected a battery claim where the plaintiff delayed in reporting, continued social contact with the defendant, and produced no corroboration.

**Holding**: The court concluded that "the conduct alleged, even if true, failed to establish the elements of battery."

**Application**: Plaintiff



The assault and battery cause of action must be dismissed.

## II. Plaintiff's IIED Claim Fails as a Matter of Law

Plaintiff's second cause of action for intentional infliction of emotional distress (IIED) must be dismissed. Under New York law, an IIED claim requires: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional

distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.

Plaintiff has failed to establish any of these elements.

**Case: Howell v. New York Post Co.,** 81 N.Y.2d 115 (1993)

**Facts**: Plaintiff brought an IIED claim against a newspaper for publishing private mental health information.

**Holding**: The Court of Appeals held that IIED is a "highly disfavored" tort in New York and must be "rigorously and narrowly tailored to only the most extreme, outrageous, and intolerable conduct."

**Application**: ██████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████

**Case: Murphy v. American Home Products Corp.,** 58 N.Y.2d 293 (1983)

**Facts**: Plaintiff alleged IIED based on wrongful termination and humiliation.

**Holding**: The court dismissed the claim, reiterating that even deliberate harm does not give rise to IIED unless the conduct is "utterly intolerable in a civilized society."

**Application**: Here, ████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

**Case: Freihofer v. Hearst Corp.,** 65 N.Y.2d 135 (1985)

**Facts**: A prominent attorney sued over the publication of embarrassing personal information.

**Holding**: The court held that reputational damage, embarrassment, or even public scrutiny are insufficient to constitute severe distress absent medical or psychological harm.

**Application**: ███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████

███████████████████████████

████████████████████████████████████████. The

claim must be dismissed.

### III. Plaintiff's GMVPA Claim Fails as a Matter of Law

Plaintiff's final cause of action under the New York City Gender-Motivated Violence Protection Act (GMVPA), N.Y.C. Admin. Code § 10-1105. But the record does not support a claim of gender-motivated violence. The inconsistencies in Plaintiff's narrative, the lack of physical evidence, the unlawful means used to identify Defendant, and the absence of any admissible medical or psychological history render her claim legally deficient.

Under the GMVPA, a plaintiff must prove that the violence was "motivated by gender" and constituted a "crime of violence" as defined under federal law. But courts have consistently rejected GMVPA claims where the facts do not support clear evidence of gender-based animus.

**Case: Jaffe v. City of New York**, 2020 WL 1189271 (S.D.N.Y. Mar. 12, 2020)

**Facts**: Plaintiff alleged GMVPA violations after being groped by an NYPD officer.

**Holding**: The court dismissed the claim, holding that a single, personal sexual assault, without clear evidence of gender animus or discriminatory motive, was insufficient under the statute.

**Application**: Like in *Jaffe*, ██████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████

**Case: Gonzalez v. United States**, 2021 WL 4737081 (S.D.N.Y. Oct. 12, 2021)

**Facts**: Plaintiff alleged a sexual assault by a federal employee and brought GMVPA claims.

**Holding**: The court held that a GMVPA claim requires specific factual allegations demonstrating gender-based motivation.

**Application**: ██████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████

**Case: Ghafurian v. Weiss**, 2022 WL 484307 (Sup. Ct. N.Y. Cnty. Feb. 16, 2022)

**Facts**: A GMVPA claim survived summary judgment where plaintiff provided contemporaneous text messages and witness testimony demonstrating misogynistic motivation.

**Holding**: The court emphasized that gender animus must be "a substantial motivating factor."

**Application**: ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███

███████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

██████████████████████████

**Case: United States v. Gelzer**, 50 F.3d 1133 (2d Cir. 1995)

**Facts**: The Second Circuit excluded physical evidence where the government failed to establish a clear and complete chain of custody.

**Holding**: The court emphasized that "the chain of custody must be sufficiently complete to render it improbable that the original item has been exchanged, contaminated, or tampered with."

**Application**: ███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

**Case: United States v. Morrison**, 153 F.3d 34 (2d Cir. 1998)

**Facts**: Inadmissible evidence was introduced based on a chain-of-custody failure, where the court found that records lacked proper origin verification.

**Holding**: The court reaffirmed that when a party cannot demonstrate where a document originated from, and whether it has been altered or reconstructed, the evidence must be excluded.

**Application**: ████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████.

The claim must be dismissed.

**CONCLUSION**

This lawsuit never should have reached a courtroom.

It is based on a single NYPD document that was unlawfully obtained, never authenticated, and never disclosed through proper channels. Plaintiff admitted in therapy ██████

████████████████████████████████████████

 (Exhibit MB-0107). Her father, ████████, confirmed in writing that ████████ ████████ (Exhibit OB-0023; Exhibit OB-0024). ████████ ████████ (Exhibit FOIL-003).

There is no contemporaneous medical evidence supporting Plaintiff's claims. There is no witness testimony. ████████,  after she had already decided to sue. There are no records from Dr. ████ or Dr. ████ and the only document from Dr. ████ is a vague, one-page note that makes no reference to ████████ (Exhibit MB-0058).

Every single claim Plaintiff asserts, under the GMVPA, IIED, and common law assault and battery, is unsupported by admissible evidence. What remains is a retrofitted narrative based on redacted therapy notes, speculative psychiatric opinions, and an illegal file that served as the sole method for identifying and naming Defendant before the statute of limitations expired.

The Court must not permit this case to proceed to trial. Plaintiff's evidence is procedurally invalid, factually inconsistent, and legally insufficient. There is no genuine dispute of material fact. There is only misconduct, hearsay, and a broken evidentiary chain.

For all the foregoing reasons, Defendant respectfully requests that this Court grant summary judgment in full and dismiss the Complaint with prejudice.

**FINAL REMARK**

Defendant is not seeking Rule 11 sanctions. He is not seeking attorney's fees. Though both would be justified, he is asking for nothing from Plaintiff or her legal team, only that this case be dismissed, and that the damage it has caused be acknowledged.

This lawsuit has already destroyed Defendant's name. When you search for him online, this case is the first result. He cannot find steady work. He has been questioned by former employers, former friends, and potential clients. All of it based on a complaint that was built on an illegally obtained file, contradictory evidence, and a narrative constructed sixteen years after the fact.

Defendant has not countersued in this action. He has filed a separate lawsuit, 1:24-cv-09833, to address the unlawful conduct that made this case possible. But here, in this forum, he has asked for nothing beyond the opportunity to clear his name.

He now asks this Court to put an end to this, to dismiss the Complaint with prejudice so that he can begin to rebuild a reputation that was publicly destroyed by a story that was never true.

Respectively Submitted,



CC: via ECF

Mark Peters

Leslie Brovner

Jonathan Bunch