UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARISSA BROWN,

                Plaintiff,

v.

RICHARD TROVATO,

                Defendant.

Case No. 1:23-cv-09895-PAE

---

# PLAINTIFF MARISSA BROWN'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT RICHARD TROVATO'S MOTION FOR SUMMARY JUDGMENT

---

Dated: August 29, 2025
       New York, New York

PETERS BROVNER LLP
*Attorneys for Plaintiff*
139 Fulton Street – Suite 132
New York, New York 10038
(917) 639-3270
lbrovner@petersbrovner.com
mpeters@petersbrovner.com
jbunch@petersbrovner.com

*On Brief:*

Lesley Brovner
Mark Peters
Jonathan Bunch

# **TABLE OF CONTENTS**

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ............................................................................................................ iii

**INTRODUCTION**............................................................................................................................ 1

**STATEMENT OF FACTS**............................................................................................................... 1

**ARGUMENT** ..................................................................................................................................... 3

    Point I............................................................................................................................................ 4

    *Defendant has not met his burden under Fed. R. Civ. Pro. 56(c).* ............................................... 4

    Point II .......................................................................................................................................... 5

    *Defendant's cited cases, to the extent they exist (and many of them do not), do not stand for the propositions for which he is citing them, and therefore cannot support his claim for summary judgment.* ................................................................................................................................. 5

**CONCLUSION** ................................................................................................................................ 9

## TABLE OF AUTHORITIES

**Cases**
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ............................................................... 4
*Bennett v. Vaccaro*, Case No. 08-cv-4028, 2011 WL 1900185 (S.D.N.Y. Apr. 11, 2011) ............ 5
*Brown v. Riverside Church in City of New York*, 231 A.D.3d 104 (1st Dept. 2024) .............. 1, 2, 7
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................ 3
*Charkhy v. Altman*, 252 A.D.3d 413 (1st Dept. 1998) ............................................................ 8
*Fishl v. Armitage*, 128 F.3d 50 (2d Cir. 1997) ........................................................................ 3
*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir.2001) ............................................................ 3
*Howell v. New York Post Co.*, 81 N.Y.3d 115 (1993) ............................................................... 9
*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) .................................................... 5, 6
*Matsushita Electric Ind. Co. v. Zenith Radio Corp. et al.*, 475 U.S. 574 (1986) ......................... 5
*Matter of Nassau County Dept. of Social Servs. v. Ablog, 194 A.D.3d 817 (2d Dept. 2017)* ......... 8
*Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293 (1983) .............................................. 7
*Riveria v. United States*, 928 F.2d 592 (2d Cir. 1991) ............................................................ 6
*U.S. v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995) ............................................................................ 7

**Other Authorities**
Gender-Motivated Violence Protection Act, New York City, N.Y., Code § 10-1101 ............... 4, 8

**Rules**
Fed. R. Civ. P. 56(c) ........................................................................................................... 3, 4
Local Rule 56.1 ..................................................................................................................... 4

**MEMORANDUM OF LAW**

Plaintiff, Marissa Brown ("Plaintiff"), submits this memorandum of law in opposition to Defendant *Pro Se*, Richard Trovato's ("Defendant"), Motion for Summary Judgment (Doc. No. 149) ("Defendant's MSJ").

**INTRODUCTION**

Defendant seeks summary judgment dismissing this lawsuit, in effect arguing that there are no facts from which a jury could find that Defendant raped Plaintiff in the bathroom of a nightclub. Simply put, this is absurd: Plaintiff testified under oath that she was raped by Defendant; a witness testified under oath that she saw Defendant follow Plaintiff into the bathroom in question on the night of the rape; an "outcry" witnesses testified that Plaintiff told her about the rape just hours after it occurred and accompanied Plaintiff to the hospital to have a rape kit administered. These facts alone are more than sufficient for a jury to determine that the rape occurred, which is the central fact upon which this case turns.

While Defendant cites to alleged discrepancies between certain written reports about the rape and Plaintiff's testimony, these do not preclude a jury from believing Plaintiff and such arguments should be summarily rejected. Similarly, Defendant's arguments about the authenticity of certain documents are not relevant given the witness testimony available in this case.

For all of these reasons, Summary Judgment is not appropriate in this matter.

**STATEMENT OF FACTS**

On the night of February 22, 2007, into the early morning of February 23, 2007, Plaintiff went out with two other acquaintances, Antya Waegemann and Charlotte Bonner, to two different nightclubs in Manhattan: Marquee and afterwards to Cain. *See* Affidavit of Marissa Brown, sworn to August 26, 2025 ("Brown Aff."), at ¶¶ 2-4; *see also*, Affirmation of Lesley Brovner, dated

1

August 29, 2025 ("Brovner Aff."), Exs. A (excerpts from the deposition of Marissa Brown, filed under seal) at pp. 23-25; B (excerpts from the deposition of Antya Waegemann) at p. 29; & C (excerpts from the deposition of Charlotte Bonner) at pp. 34-35. They met Defendant at Marquee – where Defendant got all three women into the club, despite their being under 21 years old – and Defendant later got all three women into Cain as well. Brown Aff., at ¶¶ 3-4; *see also* Brovner Aff., Exs. A at p. 34; B at p. 16; & C at p. 27.

At Cain, Ms. Waegemann saw Defendant go into the bathroom with Plaintiff, and it was in this bathroom where Defendant violently raped Plaintiff. Brown Aff., at ¶ 5; *see also*, Brovner Aff., Exs. A at pp. 30-33; B pp. 35, 66-67.

Within hours of the rape, Plaintiff called a friend, Rebecca Stahl, and told her what happened. Brown Aff., at ¶ 6; Brovner Aff., Exs. A at p. 39; & D (excerpts from the deposition of Rebecca Stahl) at pp. 31-32. Ms. Stahl then accompanied Plaintiff to the NYU Medical Center on the morning of February 23, 2007, where the hospital administered a rape kit and toxicology screening upon Plaintiff. Brown Aff., at ¶ 7; Brovner Aff., Exs. A at p. 40; D at p. 35.

Approximately two weeks later, Plaintiff informed her father, Mr. Owen Brown, of her rape by Defendant. Brown Aff., at ¶ 8; Brovner Aff., Exs. A at pp. 36-37; & E (excerpts from the deposition of Owen Brown) at p. 30. (Mr. Brown was out of the country when Plaintiff's rape occurred. Brown Aff., at ¶ 8; Brovner Aff., Exs. A at p. 36 & E at p. 30.) Mr. Brown took his daughter to the NYPD to report her rape, and while at the NYPD, Plaintiff was interviewed by a Det. Patrick Purcell where Plaintiff gave Det. Purcell Defendant's first name and Defendant's phone number, identifying Defendant as her rapist. Brown Aff., at ¶¶ 8-9; Brovner Aff., Exs. A at pp. 37-38 & E at pp. 30, 34.[1]

---

[1] Detective Purcell, at his deposition, confirmed that the notes were his. Brovner Aff., Ex. F at pp. 15-16.

2

In 2023, when Plaintiff decided to seek justice for the rape, she set about identifying Defendant. Brown Aff., at ¶¶ 12-13. Based on the phone number she gave the police, Defendant was identified. Brown Aff., at ¶ 12; Brovner Aff., Ex. A at pp. 44-45. Moreover, once she identified Defendant, she found pictures of Defendant online and confirmed that he was her rapist. Brown Aff., at ¶¶ 12-13; see also Brovner Aff., Ex. G (excerpts of text messages between Plaintiff and Ms. Waegemann) at MB0089-90. Finally, after identifying Defendant as her rapist, Plaintiff sent a picture of Defendant to Ms. Waegemann, and Ms. Waegemann confirmed that Defendant was the individual who was out with them on the night Plaintiff was raped. Brown Aff., at ¶ 13; Brovner Aff., Exs. A at p. 67 & G at MB0091.

## ARGUMENT

A motion for summary judgment may only be granted where the moving party demonstrates that "the pleadings, depositions, answers to interrogatories, and admissions on file […] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is considered *material* "if it might affect the outcome of the suit under the governing law," and a dispute of fact is deemed *genuine* when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir.2001) (internal quotation marks omitted). As such, "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fishl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997).

3

When determining whether there is a genuine issue of fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

**Point I**

*Defendant has not met his burden under Fed. R. Civ. Pro. 56(c).*

Plaintiff's Complaint alleges three New York City and State common law causes of action against Defendant for raping her: assault and battery; intentional infliction of emotional distress ("IIED"); and violation of New York City's Gender-Motivated Violence Protection Act (New York City, N.Y., Code § 10-1101, et. seq.) ("GMV Act"). Doc. No. 4, ¶¶ 28 – 38. For Defendant to prevail on his motion for summary judgment, he must establish that for each of these causes of action "there is no genuine issue as to any material fact" under Fed. R. Civ. Pro. 56(c), and Defendant has failed to do so.[2]

First, the parties genuinely dispute whether Defendant was present at the Cain nightclub with Plaintiff in the early morning hours of February 23, 2007. As noted above, Plaintiff has submitted considerable evidence that Defendant was indeed at the nightclub in question, which is clearly a material fact. Second, the parties dispute whether Defendant followed Plaintiff into a bathroom at Cain and raped her in that bathroom. Again, as noted above, Plaintiff has submitted considerable evidence that Defendant did follow Plaintiff into the bathroom and rape her.

Defendant now claims that certain documents are either missing or contradict Plaintiff's account. Defendant's MOL, *generally*, pp. 11-15. Such a claim, even if accepted – and Plaintiff does not accept this characterization of the documents – does not justify summary judgement. *See,*

---

[2] Defendant has failed to file a statement of undisputed facts pursuant to Local Rule 56.1. This alone is grounds to deny his motion for summary judgment. Because he has failed to file such a statement, Plaintiff is unable to file a counter-statement refuting any such facts.

4

*e.g., Bennett v. Vaccaro*, Case No. 08-cv-4028, 2011 WL 1900185 at *8 (S.D.N.Y. Apr. 11, 2011) (denying summary judgment where defendants failed to "establish that [plaintiff's] testimony is, either on its face or in light of any other statements he has made, so self-contradictory or implausible as to rule out crediting it.")

As to each of these factual disputes, Plaintiff – as the non-movant – has met her burden of establishing more than "metaphysical doubt as to [these] material facts." *See Matsushita Electric Ind. Co. v. Zenith Radio Corp. et al.*, 475 U.S. 574, 586 (1986). Plaintiff's witnesses who, under oath, identified Defendant has having been with them at Cain on the night Plaintiff was raped, hospital records of which even Defendant has not questioned their authenticity, and then police records identifying Defendant by his first name and phone number as Plaintiff's rapist all clearly surmount this hurdle.

Accordingly, weighing this and the other evidence in this case are matters ripe for a jury to decide and are thus not enough to grant Defendant's motion for summary judgment.

**Point II**

*Defendant's cited cases, to the extent they exist (and many of them do not), do not stand for the propositions for which he is citing them, and therefore cannot support his claim for summary judgment.*

As to the cases cited by Defendant that actually do exist, they simply do not support his motion. Defendant cites *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) where the Second Circuit found that the plaintiff "relied almost exclusively on his own testimony[,]" and that testimony "was largely unsubstantiated by any other direct evidence[.]" *Jeffreys*, 426 F.3d at 551. The Second Circuit held that these circumstances served as an exception to the "general rule that district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage" and that the lower court "did not err in concluding, in the course of determining

5

whether there were any 'genuine issues of material fact,' that no reasonable jury could have credited [the plaintiff's] testimony." *Id.*

This case is easily distinguishable. Unlike *Jeffreys*, Plaintiff here is not relying solely on her own testimony. Again, Plaintiff has identified two witnesses that were with her at the Cain nightclub when Defendant raped her. One of these witnesses, Ms. Waegemann, testified, under oath, to seeing Defendant follow Plaintiff into the bathroom in question (Brovner Aff., Ex. B at pp. 35, 66-67), and Ms. Waegemann also identified both Defendant and his wife by photograph as two of the people that were with them the night that Plaintiff states she was raped. *See* Brovner Aff., Ex. G at MB0090-93. And both Ms. Waegemann and Ms. Bonner identified Defendant as the man they were all with on that night. See Brovner Aff., Exs. B at p. 29, & C at pp. 34-35.

Further, Defendant has deposed several of Plaintiff's outcry witnesses who all corroborate Plaintiff's accounting of her rape to them. Brovner Aff., Exs. D at pp. 30-36; E at pp. 21-22, 28-30, 36-44; H (excerpts from the deposition of Maya Leeds) at pp. 17-18, 33-38 & I (excerpts from the deposition of Julia Bakshi) at pp. 16-22. Plaintiff has also provided Defendant with copies of hospital records following her rape, her NYPD police records from her reporting her rape approximately two weeks later, and copies of her mental health records, to the extent they still exist, that reflect Plaintiff's accounting of her rape to her mental health to her medical and mental health providers. Brovner Aff., at ¶ 13. Thus, to compare Plaintiff here with the plaintiff in *Jeffreys* is grossly inaccurate.

Defendant next cites *Riveria v. United States*, 928 F.2d 592 (2d Cir. 1991), in an attempt to undermine Plaintiff's accounting of her rape because she joined Defendant and his group of friends at the Gansevoort Hotel after she was raped at Cain Night Club. Defendant's MOL, p. 20. The *Riveria* case is a Fourth Amendment search and seizure case and is wholly inapplicable here.

6

Defendant also cites *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293 (1983), in support of his claim that Plaintiff has not suffered emotional distress to give rise to her state law claim of IIED against Defendant. Defendant's MOL, p. 22. In *Murphy*, the court found that the plaintiff's claims – that he was fired by the defendant – "fall far short" of New York's "strict standard" for IIED. *Id.* at 303.

Comparing the emotional distress allegedly suffered by the terminated employee in the *Murphy* case to that of, Plaintiff, a rape survivor is absurd and offensive. Moreover, Defendant blatantly misstates the facts of the present case. He states that Plaintiff, here, "did not report emotional collapse" at the time. Defendant's MOL, p. 22. The term "emotional collapse" is not an element of IIED. *See, e.g., Brown v. Riverside Church in City of New York*, 231 A.D.3d 104, 109 (1st Dept. 2024) (under New York law, "IIED has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and [plaintiff's] injury; and (iv) severe emotional distress") (internal quotes and citations omitted).

Plaintiff clearly experienced severe emotional distress at that time and as a direct result of Defendant's raping her. To begin with, Plaintiff's expert witness who examined Plaintiff reported that she suffered emotional distress as a result of the rape. Brovner Aff., Ex. J (Plaintiff's expert report, filed under seal). Moreover, Plaintiff's testimony made clear the emotional distress she suffered (Brovner Aff., Ex. A, pp. 69-72). Defendant's statement that Plaintiff "did not seek trauma treatment" (Defendant's MOL, p. 22) for sixteen years is also false. *See* Brown Aff., ¶ 10; Brovner Aff., Ex. A at p. 70-71.

Defendant also cites *U.S. v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995), in support of his argument that Plaintiff did not establish a chain of custody of the NYPD records used to identify Defendant.

7

Defendant's MOL, p. 25.  This criminal case is irrelevant in the civil context.  There is no doubt – as noted above – that Plaintiff's witnesses have all identified Defendant as the person in the club with them on the night of the rape, and Plaintiff has clearly identified him as her rapist.  Further, as noted above, the detective who wrote the report testified that these were his notes.

Finally, as to the other cases cited by Defendant, many simply do not exist or purport to quote language from the cases that does not exist.  For example:

(1) Defendant cites *Otero v. Town of Southampton* at 194 A.D.3d 817 (2d Dept. 2017) at Defendant's MOL, pp. 20-21.  The case titled at this citation is actually *Matter of Nassau County Dept. of Social Servs. v. Ablog*, which is a family law case where the court found that it lacked subject matter jurisdiction to modify a Florida child support order.  Plaintiff has been unable to locate another case titled *Otero v. Town of Southampton* from New York's Appellate Division, Second Department, with a plaintiff who alleged sexual assault.

(2) Defendant cites a supposed S.D.N.Y. case from 2020 titled *Jaffe v. City of New York* bearing the Westlaw citation 2020 WL 1189271.  Defendant's MOL, p. 24.  Plaintiff is unable to locate any case at that Westlaw citation or a *Jaffe v. City of New York* case from the S.D.N.Y. in 2020.

(3) Defendant also cites to another supposed S.D.N.Y. case from 2021 titled *Gonzalez v. United States* bearing the Westlaw citation 2021 WL 4737081.  Defendant's MOL, p. 24.  Plaintiff is unable to either locate any case in Westlaw at that citation or any case titled *Gonzalez v. United States* in the S.D.N.Y. from 2021 that concerns New York City's GMV Act.

(4) Defendant cites *Charkhy v. Altman*, 252 A.D.3d 413 (1st Dept. 1998) , in support of his claim that Plaintiff has failed to establish her cause of action for battery against Defendant. Defendant's MOL, p. 21.  While *Charkhy* does exist, the court's brief opinion does not

reflect that the plaintiff "delayed in reporting" the battery or that the plaintiff "continued social contact with the defendant" as Defendant claims here. Defendant's MOL, p. 21. Further, Defendant quotes the court in *Charkhy* as having concluded "the conduct alleged, even if true, failed to establish the elements of battery[]" yet that quoted language does not appear in the *Charkhy* opinion.

(5) Defendant cites *Howell v. New York Post Co.*, 81 N.Y.3d 115 (1993) in support of his claim that Plaintiff's claim of IIED under New York law must be dismissed. Defendant's MOL, p. 22. While the *Howell* case does address IIED under New York law, the opinion from the New York Court of Appeals does not contain the phrases "highly disfavored" or "rigorously and narrowly tailored to only the most extreme, outrageous, and intolerable conduct[]" as Defendant has attributed to the court's holding.

## CONCLUSION

Defendant has not met his burden of establishing his entitlement to summary judgment because he has not overcome the parties' genuine disputes of material facts. For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion.

Dated: New York, New York
       August 29, 2025

Respectfully submitted,

_____/s/_____
Lesley Brovner
Mark G. Peters
PETERS BROVNER LLP

*Counsel for Plaintiff*

9

**CERTIFICATE OF COMPLIANCE**

I, Lesley Brovner, hereby certify that this Memorandum of Law complies with the Local Rules of the United States District Court for the Southern District of New York, Rule 7.1(c), regarding the length of a Memorandum of Law. Excluding the caption, table of contents, table of authorities, the signature block and any required certificates, this Memorandum of Law contains approximately 2,808 words as calculated by Microsoft Word Version 2507.

Dated: New York, New York
       August 29, 2025

                                           Respectfully submitted,

                                           /s/ *Lesley Brovner*
                                           Lesley Brovner
                                           PETERS BROVNER LLP

                                           *Counsel for Plaintiff*